SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Statewide Insurance Fund v. Star Insurance Company** (A-62-21) (086440)

**Argued November 7, 2022 -- Decided February 16, 2023**

**FASCIALE, J., writing for a unanimous Court.**

The Court considers which entity has the primary responsibility to pay the settlement of a negligence action brought by the parents of a boy who tragically died from injuries sustained on the Long Branch beach: Statewide Insurance Fund (the Fund), a public entity joint insurance fund (JIF) created under the Joint Insurance Fund Act, or Star Insurance Company (Star), a commercial general liability insurance company. That determination turns on whether the Fund provides "insurance" to its members or whether, instead, the JIF members protect against liability through "self-insurance." The nature of the JIF protection is essential because the city's policy with Star contains a clause under which Star's coverage obligations begin only after coverage available through "other insurance" has been exhausted; the clause, however, does not mention "self-insurance."

In addition to other protection not relevant here, Long Branch joined the Fund and purchased a commercial general liability policy from Star. As a member of the Fund, Long Branch was entitled to receive $10 million in liability coverage per occurrence. The Fund's contracting document contains a clause limiting recovery from the Fund to liability in excess over other "insurance or self-insurance" coverage. Under the Star policy, Long Branch had $10 million in liability insurance coverage, excess to a $1 million self-insured retention (SIR). The parties agree that Star's insurance coverage is excess only over "other insurance." Payment of the SIR is not an issue on appeal. The question here is which source -- the Fund or Star -- has the primary responsibility to pay the remaining settlement amount.

The trial judge concluded that membership in the Fund did not trigger Star's "other insurance" clause and that Star had the primary responsibility. The Appellate Division affirmed, and the Court granted certification. 251 N.J. 470 (2022).

**HELD:** A JIF established under the Joint Insurance Fund Act affords liability protection to public entities through "self-insurance," not insurance. Here, Star's "other insurance" clause is not triggered because "self-insurance" protection through JIF membership is not "other insurance." Star's coverage is therefore primary.

1

1.  The JIF enabling statute provides in part that the governing body of a municipality "may by resolution agree to join together with any other local unit or units to establish a [JIF] for the purpose of insuring against liability . . . through self insurance, the purchase of commercial insurance or reinsurance, or any combination thereof." N.J.S.A. 40A:10-36 (emphases added). Long Branch joined the Fund to protect against liability through "self-insurance," and it separately purchased liability insurance, thus complying with N.J.S.A. 40A:10-36. In N.J.S.A. 40A:10-48, the Legislature directly states that "[a] [JIF] established pursuant to the provisions of this act is not an insurance company or an insurer under the laws of this State, and the authorized activities of the fund do not constitute the transaction of insurance nor doing an insurance business. A fund established pursuant to this act shall not be subject to the provisions of Subtitle 3 of Title 17 of the Revised Statutes." (emphases added). The JIF Act thus expressly distinguishes JIFs from insurance companies and exempts them from regulatory provisions in Code sections devoted to insurance. New Jersey's approach is consistent with that of most states which permit governmental risk-pooling, and courts in the jurisdictions with statutes comparable to N.J.S.A. 40A:10-48 have applied those statutes in accordance with their express terms. Applying the clear and plain terms of N.J.S.A. 40A:10-48, the Court holds that JIFs cannot insure members; instead, JIFs enable members to self-insure, spread risk, and reduce insurance costs. As a matter of law, Long Branch's liability protection as a Fund member is through "self-insurance," not "insurance." (pp. 7-13)

2.  The Court explains how the general differences in risk allocation between JIFs and commercial general liability carriers reinforce the conclusion that JIF members are self-insured. (pp. 13-16)

3.  Because "self-insurance" is not the same as "insurance" under the law, and because membership in the Fund protects against liability claims through self-insurance rather than by insurance through an authorized carrier, Star's "other insurance" clause is not triggered. Unlike the Fund's contracting document, which specifies that the Fund's obligations are excess over "insurance or self-insurance" (emphasis added), Star's clause states only that insurance coverage available under the Star policy is "excess over . . . any of the other insurance." Because Star's clause does not encompass the self-insurance available to members through the Fund, Star's insurance policy is primary in covering the underlying plaintiffs' settlement of the negligence action against Long Branch. (p. 17)

    **AFFIRMED.**

**CHIEF JUSTICE RABNER; JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and WAINER APTER; and JUDGE SABATINO (temporarily assigned) join in JUSTICE FASCIALE's opinion.**

2

Statewide Insurance Fund,
a joint insurance fund in
the State of New Jersey,

Plaintiff-Respondent,

v.

Star Insurance Company
and Meadowbrook, Inc.,

Defendants-Appellants.

On certification from the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| November 7, 2022 | February 16, 2023 |

Thomas E. Schorr argued the cause for appellants
(Dilworth Paxson, attorneys; Thomas E. Schorr, on the
briefs).

Francis X. Donnelly argued the cause for respondent
(Turner, O'Mara, Donnelly & Petrycki, attorneys; Francis
X. Donnelly, on the brief).

JUSTICE FASCIALE delivered the opinion of the Court.

This insurance coverage dispute between a public entity joint insurance

fund (JIF) and Star Insurance Company (Star), a commercial general liability

insurance company, turns on whether the JIF provides "insurance" to its members or, instead, the JIF members protect against liability through "self-insurance." That distinction is important because Star's insurance policy includes a clause under which its coverage obligations begin only after coverage available through "other insurance" has been exhausted; the clause, however, does not mention "self-insurance." Star argues that the JIF provides insurance and therefore Star's coverage is excess to the JIF; the JIF disagrees, contending that because its members are instead "self-insured," Star's coverage is primary.

We hold that a JIF established under N.J.S.A. 40A:10-36 affords liability protection to public entities through "self-insurance." Under the plain language of N.J.S.A. 40A:10-48, a JIF "is not an insurance company or an insurer under the laws of this State" and its "authorized activities . . . do not constitute the transaction of insurance nor doing an insurance business." By the statute's plain terms, JIFs cannot provide insurance in exchange for premiums, as insurance companies typically do; instead, JIF members reduce insurance costs by pooling financial resources, distributing and retaining risk, and paying claims through member assessments. Therefore, JIFs protect members against liability through "self-insurance." "Self-insurance" is not insurance.

2

We affirm the grant of summary judgment to the JIF and denial of summary judgment to Star. We conclude, as did the trial judge and Appellate Division, that Star's "other insurance" clause is not triggered because "self-insurance" protection through JIF membership is not "other insurance." Star's coverage is therefore primary.

## I.

### A.

The payment dispute before us arose from a tragic death on what should have been a relaxing day at the beach. A twelve-year-old boy who was visiting the beach with his family in the city of Long Branch dug a tunnel in the sand near a lifeguard stand. The sand collapsed on the boy, and he died the next day from his injuries.

The boy's parents filed a negligence action against Long Branch, Long Branch Beach Patrol, and seasonal beach police officers who were responsible for patrolling the area. The parents sought damages under Portee v. Jaffee, 84 N.J. 88 (1980), the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, and the Survival Act, N.J.S.A. 2A:15-3. The parties settled the underlying negligence action, but payment of the settlement awaits our judgment in this appeal, which requires review of the three steps Long Branch took to protect itself from liability claims.

First, Long Branch joined plaintiff Statewide Insurance Fund (the Fund), which is a public entity JIF created under the Joint Insurance Fund Act. See N.J.S.A. 40A:10-36. As a member of the Fund, Long Branch was entitled to receive $10 million in liability coverage per occurrence. The Fund's contracting document contains a clause limiting recovery from the Fund to liability in excess over other "insurance or self-insurance" coverage -- in other words, Long Branch may recover from the Fund only after it exhausts any other insurance or self-insurance coverage to which it is entitled. Indemnification on law enforcement claims is excluded.

Second, Long Branch purchased a commercial insurance policy from Greenwich Insurance Company (Greenwich), which provided primary insurance coverage for law enforcement liability claims. Greenwich is not involved in this appeal.

Third, Long Branch purchased a commercial general liability insurance policy from defendant Star. Under the Star policy, Long Branch had $10 million in liability insurance coverage, excess to a $1 million self-insured retention (SIR). The parties agree that Star's insurance coverage is excess only over "other insurance."

Payment of the SIR is not an issue on appeal. Long Branch and Greenwich paid the SIR to the plaintiffs in the underlying negligence action.

4

The question here is which source -- the Fund or Star -- has the primary responsibility to pay the remaining settlement amount.

B.

Star and the Fund moved for summary judgment. The trial judge granted the Fund's motion and denied Star's motion, concluding that Long Branch's membership in the Fund did not trigger Star's "other insurance" clause. The judge determined that the Fund did not provide insurance coverage to its members, but rather Long Branch self-insured by joining the Fund. Consequently, the plaintiffs in the underlying action could look to Star's primary policy limits, above the SIR, for the balance of their settlement with Long Branch.

The Appellate Division agreed with the trial judge. Like the trial judge, the Appellate Division found that the Fund is not an insurance company, that the Fund is not an insurer under New Jersey law, and that the Fund's authorized activities did not amount to transacting insurance business. The appellate court, too, determined that Fund membership protected Long Branch against liability claims through "self-insurance," and the court therefore upheld the Fund's summary judgment.

We then granted Star's petition for certification. 251 N.J. 470 (2022).

5

## II.

On appeal, Star's main contention is that, regardless of the JIF statutory framework, the Fund issued what Star characterizes as an insurance policy to Long Branch and is bound by its terms. Under that purported policy, Star maintains that the Fund provides "insurance," not "self-insurance." Star argues that its own "other insurance" clause is therefore triggered, making Star's coverage excess to the "insurance" provided by the Fund.

The Fund counters that it did not provide "insurance" to Long Branch for two reasons. First, the Fund asserts that the Legislature explicitly exempted JIFs from insurance statutes and regulations, conclusively precluded JIFs from acting as insurers, and unambiguously declared that authorized JIF activities do not constitute the transaction of insurance or doing insurance business. Second, the Fund contends that because claims against Long Branch are satisfied from member assessments rather than from an authorized insurance policy, Long Branch "self-insured" and retained risk by joining the Fund. The Fund therefore maintains that because its members protect against liability through "self-insurance" rather than "insurance," Star's "other insurance" clause is not triggered, and Star should therefore cover the damages that exceed the SIR up to Star's policy limit. The Fund would only provide excess coverage after Star's policy limit is exhausted.

6

III.

A.

This appeal involves review of two summary judgment orders.  In reviewing those orders, we apply the same standard as the motion judge.  See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  The Court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  Ibid.  Here, summary judgment was based on statutory interpretation.  When the text of a statute is clear, we apply that language without relying on extrinsic evidence to discern its meaning.  DiProspero v. Penn, 183 N.J. 477, 492 (2005).  We turn to the unambiguous text of the Joint Insurance Fund Act, N.J.S.A. 40A:10-35 to -58, which governs the creation and function of JIFs, to determine de novo whether JIFs are insurers.

B.

The JIF enabling statute, N.J.S.A. 40A:10-36, provides in part:

> a.  The governing body of any local unit[1] . . . may by resolution agree to join together with any other local unit or units to establish a [JIF] for the purpose of insuring against liability . . . through self insurance, the

---

[1]  A "local unit" is a county or municipality.  N.J.S.A. 40A:1-1.

purchase of commercial insurance or reinsurance, or any combination thereof . . . .

[(emphases added).]

Exercising its full rights under the enabling statute, Long Branch joined the Fund to protect against liability through "self-insurance," and it separately purchased liability insurance from Greenwich and Star. Long Branch complied with N.J.S.A. 40A:10-36.

In N.J.S.A. 40A:10-48, the Legislature directly addressed whether JIFs are considered insurance companies or insurers authorized to conduct the business of insurance:

> A [JIF] established pursuant to the provisions of this act is not an insurance company or an insurer under the laws of this State, and the authorized activities of the fund do not constitute the transaction of insurance nor doing an insurance business. A fund established pursuant to this act shall not be subject to the provisions of Subtitle 3 of Title 17 of the Revised Statutes.

[(emphases added).]

Under that clear statutory provision, the Fund is not an insurance company; the Fund's authorized activities do not constitute either the transaction of insurance or doing the business of insurance; and, importantly, the Fund is not subject to the extensive insurance laws contained in Subtitle 3 of Title 17 of the Revised Statutes and the associated regulations.

8

The New Jersey Legislature has heavily regulated the insurance industry. In Part 1 of Subtitle 3 of Title 17, the Legislature explicitly allowed corporations to form for the purpose of insuring against specific risks. See N.J.S.A. 17:17-1 (describing multiple permitted "kinds of insurance"). In addition, the Legislature enacted comprehensive legislation governing the business of insurance by authorized New Jersey insurers. See N.J.S.A. 17:17-2 to -20. JIFs are not authorized insurers.

The statutory authorization to establish a JIF is found in Chapter 10 of Title 40A, which is devoted to municipalities and counties, not in Subtitle 3 of Title 17. Although the Legislature has cautioned that "no implication or presumption of a legislative construction" should be drawn from "[t]he classification and arrangement of the several sections of the code," N.J.S.A. 2C:1-1(f), the text of the Joint Insurance Fund Act expressly distinguishes JIFs from insurance companies and explicitly exempts them from regulatory provisions in Code sections devoted to insurance. See N.J.S.A. 40A:10-48.

That comports with the legal landscape nationally. New Jersey's approach, codified in N.J.S.A. 40A:10-48, is consistent with that of most states which permit governmental risk-pooling. In those states, risk pools are exempted from most of the statutory requirements of the state's insurance code. See Jason E. Doucette, Wading in the Pool: Interlocal Cooperation in

9

<u>Municipal Insurance and the State Regulation of Public Entity Risk Sharing Pools -- A Survey</u>, 8 <u>Conn. Ins. L.J.</u> 533, 547-48 (2001-02).  In fact, some of those states have statutes nearly identical to N.J.S.A. 40A:10-48.  <u>See, e.g.</u>, Okla. Stat. tit. 51, §§ 167(C) and 169(C) (each provision stating that "[t]he pooling of self-insured reserves, claims or losses among governments as authorized in this act shall not be construed to be transacting insurance nor otherwise subject to the provisions of the laws of this state regulating insurance or insurance companies"); N.D. Cent. Code § 26.1-23.1-02 ("Any government self-insurance pool organized under chapter 32-12.1 is not an insurance company or insurer.  The coverages provided by such pools and the administration of such pools do not constitute the transaction of insurance business."); Mich. Comp. Laws § 124.6 ("Any group self-insurance pool organized pursuant to section 5 is not an insurance company or insurer under the laws of this state.  The development, administration, and provision of group self-insurance programs and coverages authorized by this act by the governing authority created to administer the pool pursuant to section 7(c) does not constitute doing an insurance business."); Cal. Gov't Code § 990.8(c) ("The pooling of self-insured claims or losses among entities as authorized in subdivision (a) of Section 990.4 shall not be considered insurance nor be subject to regulation under the Insurance Code."); Colo. Rev. Stat. § 24-10-

115.5(2) ("Any self-insurance pool authorized by subsection (1) of this section shall not be construed to be an insurance company nor otherwise subject to the laws of this state regulating insurance or insurance companies . . . ."); 42 Pa. Cons. Stat. § 8564(d) ("The pooling of insurance risks, reserves, claims or losses shall not be construed to be transacting insurance nor otherwise subject local agencies to the provisions of statutes regulating insurance or insurance companies."); Ohio Rev. Code Ann. § 2744.081(E)(2) ("A joint self-insurance pool is not an insurance company. Its operation does not constitute doing an insurance business and is not subject to the insurance laws of this state.").

Moreover, courts in the jurisdictions with statutes comparable to N.J.S.A. 40A:10-48 have, like us, applied those statutes in accordance with their express terms. See, e.g., Bd. of Cnty. Comm'rs v. Ass'n of Cnty. Comm'rs of Okla. Self-Ins. Grp., 339 P.3d 866, 868-69 (Okla. 2014) (explaining that, through Okla. Stat. tit. 51, §§ 167(C) and 169(C), "[t]he legislature has clearly spoken" and governmental risk pools are not insurance); Hagen v. N.D. Ins. Rsrv. Fund, 971 N.W.2d 833, 838 (N.D. 2022) (holding that under N.D. Cent. Code § 26.1-23.1-02, the governmental risk pool in question "is not an insurance company or insurer, and the coverages it provides to its members and its administration of the pool do not constitute the transaction of insurance business"); County of Ingham v. Mich. Cnty. Rd.

11

Comm'n Self-Ins. Pool, 975 N.W.2d 826, 839 (Mich. 2021) (explaining that under Mich. Comp. Laws § 124.6, governmental risk pools are neither insurers "nor even in the insurance business"); Harris v. Haynes, 445 S.W.3d 143, 149 (Tenn. 2014) ("Tennessee Code Annotated section 29-20-401(d)(1) plainly exempts special funds created by agreement of governmental entities and consisting of the pooled funds of governmental entities from Tennessee's insurance statutes.").

Applying the clear and plain terms of N.J.S.A. 40A:10-48, we hold that JIFs cannot insure members; instead, JIFs enable members to self-insure, spread risk, and reduce insurance costs.

In so holding, we reject Star's argument that general references to "insurance" in the Joint Insurance Fund Act should be interpreted to mean that JIFs are "providing insurance to their members." The fact that the word "insurance" appears in Title 40A does not mean JIFs provide insurance. Star's interpretation is in direct conflict with the unambiguous text of N.J.S.A. 40A:10-36 and -48.

Nor does referencing the word "insurance" in the Fund's contracting document override the Legislature's clear mandate that JIFs are not insurance companies, that they cannot insure members, and that their authorized activities do not constitute "the transaction of insurance nor doing an insurance

12

business." See N.J.S.A. 40A:10-48. The Fund's forms and terminology cannot nullify the statute. Cf. Borough of Princeton v. Bd. of Chosen Freeholders of Mercer, 169 N.J. 135, 161 (2001) (holding that "language incorporated into . . . agreements, as well as their designated titles" cannot nullify statutory language). As a matter of law, Long Branch's liability protection as a Fund member is through "self-insurance," not "insurance."

## C.

Although we find that the plain text of the Joint Insurance Fund Act dispositively identifies the Fund's protection as "self-insurance," rather than "insurance," a close look at the general differences in risk allocation between JIFs and commercial general liability carriers reinforce our conclusion that JIF members are self-insured.

Consistent with the legislative aim of allowing public entities to save costs through risk-pooling, see A. Ins. Comm. Statement to S. 297 (1990), the Fund's stated purpose includes permitting local units "to make a more efficient use of their powers and resources by cooperating on a basis that will be of mutual advantage." Statewide Insurance Fund Bylaws art. 2. Likewise, the Fund seeks to "provide a procedure for the development, administration, and a provision of Risk Management Plans, a joint self-insurance fund or fund, joint insurance purchases and related services for members and their employees for

13

loss or damage from liability as established by N.J.S.A. 40A:10-36." Ibid.
The Fund enables cost savings through risk-pooling.

"Risk-pooling" arrangements, such as JIFs, are different from typical insurance contracts in which an authorized insurer assumes the risk in exchange for a premium. JIF members decidedly retain the risk typically assumed by carriers. Public entities do not purchase insurance from JIFs; instead, they join JIFs, manage risk, and optimize taxpayer dollars by self-insuring or reducing coverage costs.

A JIF "risk-pooling" statutory option spreads liability risk among public entity JIF members. Here, as envisioned by the enabling statute and applying the explicit limitations of N.J.S.A. 40A:10-48, risk-bearing is therefore substantially undertaken by members. They bear substantial risk given that payment on liability claims comes from government coffers. In that sense, JIFs provide "self-insurance," which is the opposite of "insurance." See 1-2 Appleman on Insurance Law & Practice, § 2.18 (2d ed. 2011) ("self-insurance is no insurance"); State v. Cont'l Cas. Co., 879 P.2d 1111, 1116-17 (Idaho 1994) ("Because 'self-insurance' does not involve a transfer of the risk of loss, but a retention of that risk, it is not insurance." In the case of government self-insurance risk pools, "the State is essentially requiring agencies to use their

state appropriated money to fund a reserve account to pay losses for which the State is ultimately liable.").

By requiring the governing body of each participating local unit within a JIF to approve the JIF's bylaws, N.J.S.A. 40A:10-39, the statute further ensures the JIF members retain risk. The bylaws must include, for example, procedures for member assessment contributions, "[p]rocedures for the purchase of commercial direct insurance or reinsurance," and "[c]ontingency plans for paying losses" if the JIF is exhausted. See id. at (b), (d), and (e). In that context, a JIF must prepare a plan of risk management, which shall include "[t]he perils or liability to be insured against." Id. at -40(a). Approval of bylaws or risk management plans may be conditioned on "conformity with the rules and regulations governing the custody, investment or expenditure of public moneys." Id. at -41(b). Such conditional approval is consistent with members saving taxpayer dollars by risk-pooling and protecting against liability through "self-insurance." Indeed, upon approval of its bylaws and risk management plan, a JIF member may protect against liability claims "by self-insurance, the purchase of commercial insurance or reinsurance, or any combination thereof." Id. at -42 (emphasis added). Those provisions reinforce that JIFs are risk-pooling arrangements rather than traditional insurance contracts.

15

Courts in other states have distinguished between self-insurance and traditional insurance. See Doucette v. Pomes, 724 A.2d 481, 489 (Conn. 1999) ("The fact that a self-insuring employer has chosen to retain its own workers' compensation risk rather than purchase insurance does not transform a company's business to that of insurance, that is, the employer is not 'doing any kind or form of insurance business' within the meaning of [Conn. Gen. Stat.] § 38a-1 (11)."); Stamp v. Dep't of Lab. & Indus., 859 P.2d 597, 601 (Wash. 1993) ("In keeping with a majority of jurisdictions which have considered the status of self-insurers under an insurance guaranty act, we hold that employers which self-insure their workers' compensation obligations in Washington are not reinsurers, insurers, insurance pools or underwriting associations."). Self-insurance is different from traditional insurance. In contrast with a licensed and regulated insurance company such as Star -- whose primary business is to assume risk in consideration of the payment of a premium -- JIF members retain significant risk by paying claims from member assessments. The retention of risk in JIFs and the plain language of N.J.S.A. 40A:10-48 support our holding: the Fund does not provide "insurance" in any traditional or legal sense.

16

IV.

Because "self-insurance" is not the same as "insurance" under the law, and because membership in the Fund protects against liability claims through self-insurance rather than by insurance through an authorized carrier, we agree with the trial judge and Appellate Division that Star's "other insurance" clause is not triggered. Unlike the Fund's contracting document, which specifies that the Fund's obligations are excess over "insurance or self-insurance" (emphasis added), Star's clause states only that insurance coverage available under the Star policy is "excess over . . . any of the other insurance." Because Star's clause does not encompass the self-insurance available to members through the Fund, Star's insurance policy is primary in covering the underlying plaintiffs' settlement of the negligence action against Long Branch.

V.

The judgment of the Appellate Division is affirmed.


CHIEF JUSTICE RABNER; JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and WAINER APTER; and JUDGE SABATINO (temporarily assigned) join in JUSTICE FASCIALE's opinion.

17